UNITED STATES DISTRICT COURT    **FILED**
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION            **MAR 0 8 2012**

| | | |
|---|---|---|
| DAKOTA, MINNESOTA & EASTERN | * | CIV 10-4037-RAL |
| RAILROAD CORPORATION, a | * | |
| Delaware Corporation, | * | |
| | * | |
| Plaintiff, | * | OPINION AND ORDER |
| | * | GRANTING MOTION |
| vs. | * | TO DISMISS |
| | * | |
| KEVIN V. SCHIEFFER, | * | |
| | * | |
| Defendant. | * | |

This matter is before the Court on remand from the United States Court of Appeals for the Eighth Circuit. See Dakota, Minn. E. R.R. Corp. v. Schieffer, 648 F.3d 935 (8th Cir. 2011). The question on remand is whether there exists subject matter jurisdiction over the present action. This Court previously determined that there was no federal subject matter jurisdiction. The Eighth Circuit agreed in part, but remanded for consideration of a theory of possible federal subject matter jurisdiction that neither party advanced before this Court or the Eighth Circuit. Plaintiff Dakota, Minnesota & Eastern Railroad Corporation ("DM&E") and Defendant Kevin Schieffer ("Schieffer") have filed several briefs addressing this theory of jurisdiction and this Court has conducted a hearing on the question. Doc. 56, 60, 61, 63, 71, 72. For the reasons explained below, this Court dismisses the case because of a lack of federal subject matter jurisdiction.

**I. FACTS**

Schieffer was the chief executive officer of DM&E. Doc. 7-1 at 5-6. In late 2004, Schieffer and DM&E entered into an "Employment Agreement." Doc. 7-1. Anticipating a "Change of Control," DM&E's stated purpose for the Employment Agreement was "to encourage the retention and ongoing employment of [Schieffer] and to enter into an agreement embodying

the terms of such employment." Doc. 7-1 at 14. The Employment Agreement afforded Schieffer

lucrative severance benefits upon termination without "Cause" or upon resignation for "Good

Reason." Those portions of the Employment Agreement pertinent to this Opinion and Order read

as follows:

> 3. <u>Compensation</u>. Compensation shall include Bonus Shares and
> the following three components:
>
> \* \* \* \* \*
>
> **(c) <u>Employee Benefits</u>**. Executive shall be eligible to participate
> in all employee health, welfare, and retirement benefits and
> programs made available generally to senior executives of the
> Company, and to the extent provided in such plans and programs,
> the Executive's spouse and other dependents shall be eligible to
> participate therein. In the event the Executive is not permitted to
> participate in such plans or programs, whether by law or the terms
> thereof, the Company shall periodically pay to the Executive, in
> lieu of such participation, a cash payment equal to the amount the
> Company would have contributed toward the Executive's
> participation in the plans or programs.
>
> \* \* \* \* \*
>
> 5. **<u>Termination of Employment</u>**
> In the event that either Party terminates the Executive's
> employment hereunder . . . other than (a) termination by the
> Company for Cause, or (b) Voluntary Termination by the
> Executive, the Company shall pay to Executive the Severance
> Payment on the day preceding the effective date of such
> termination, provided however that in the event Company
> determines to exercise its pre-Change of Control option described
> below, it may make said Severance Payment in installments proved
> for below. The Company shall continue to provide Executive the
> Employee Benefits described in section 3(c) of this Agreement for
> a period of not less than three years from the date on which the
> Severance Payment is paid in full (except in the event Company
> determines to exercise its pre-Change of Control option described
> below, such Employee Benefits shall continue for three years from
> the first payment after Company's notice of the same).

Doc. 7-1 at 17-20.

2

In October of 2008, DM&E terminated Schieffer and elected to pay him a lump-sum cash severance payment under Section 5 of the Employment Agreement. Unhappy with the amount of the lump-sum payment, Schieffer filed a demand for arbitration. Doc. 7-1.

DM&E then filed a complaint seeking injunctive relief to prevent Schieffer from pursuing his arbitration demand. Doc. 1. DM&E's complaint sought to invoke federal question jurisdiction by alleging that the dispute over Schieffer's severance arose out of an ERISA-governed plan and thus that ERISA preempted Schieffer's state law claims. DM&E argued that the Employment Agreement constituted an ERISA-governed plan. Schieffer responded by filing a motion to dismiss. Doc. 20. On June 16, 2010, this Court issued an Opinion and Order granting Schieffer's motion to dismiss for lack of subject matter jurisdiction. <u>Dakota, Minn. & E. R.R. Corp. v. Schieffer</u>, 744 F. Supp. 2d 987 (D.S.D. 2010).

DM&E appealed this Court's decision to the United States Court of Appeals for the Eighth Circuit. The Eighth Circuit agreed with this Court's conclusion that the Employment Agreement was not an ERISA-governed plan, but remanded the case for this Court to consider the possibility of an alternative theory for federal subject matter jurisdiction. <u>Schieffer</u>, 648 F.3d at 938-40. The Eighth Circuit explained that

> If [Schieffer's arbitration demands] are demands for the payment of benefits under ERISA plans, as amended by the Employment Agreement, then *to that extent* all state law remedies are preempted and the district court has subject matter jurisdiction over portions of DM&E's complaint. On the other hand, if these are demands under a free-standing single-employee contract that simply pegged DM&E's payment obligations to amounts that would have been due under ERISA plans, there is no preemption—and no subject matter jurisdiction.

<u>Schieffer</u>, 648 F.3d at 939-940 (footnote omitted). DM&E had not previously argued this theory for federal jurisdiction to this Court or the Eighth Circuit, and for good reason. Schieffer's

arbitration demands are based on a "free-standing single-employee contract that simply pegged

DM&E's payment obligations" in part to ERISA plans and do not provide this Court with subject

matter jurisdiction over the present case.

## II. DISCUSSION

### A. Complete Preemption and Express Preemption

At the outset of addressing the question on remand, it is necessary to distinguish between

"complete preemption" under ERISA § 502(a), 29 U.S.C. § 1132(a), and "express preemption"

under ERISA § 514(a), 29 U.S.C. § 1144(a). Neither this Court previously nor the Eighth Circuit

in its opinion discussed the difference between "complete preemption" and "express preemption."

It is necessary to keep separate these distinct concepts, so as to avoid confusion in analyzing the

issue as framed by the Eighth Circuit on remand.

"Complete preemption, really a jurisdictional rather than a preemption doctrine, confers

exclusive federal jurisdiction in certain instances where Congress intended the scope of federal law

to be so broad as to entirely replace any state-law claim." Franciscan Skemp Healthcare, Inc. v.

Cent. States Joint Bd. Health & Welfare Trust Fund, 538 F.3d 594, 596 (7th Cir. 2008). "Claims

arising under the civil enforcement provision of Section 502(a) of ERISA, 29 U.S.C. § 1132(a),

including a claim to recover benefits or enforce rights under the terms of an ERISA plan, implicate

one such area of complete preemption." Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., 413

F.3d 897, 907 (8th Cir. 2005) (citation omitted). Accordingly, a state-law suit that falls within the

scope of § 502(a) "arises under federal law and is removable to federal court." Id.

In contrast to the complete preemption created by § 502(a), ERISA's express preemption

clause, § 514(a), preempts any state law that "relate[s] to any employee benefit plan." 29 U.S.C.

§ 1144(a). Although express preemption under § 514(a) operates as a defense to a state law cause

4

of action, it does not confer federal jurisdiction or authorize removal. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 64 (1987) ("ERISA preemption [under § 514(a)] without more, does not convert a state claim into an action arising under federal law."); Hansen v. Harper Excavating, Inc., 641 F.3d 1216, 1221 (10th Cir. 2011) (explaining that while express preemption under § 514(a) creates a "*federal defense* of preemption to a substantive state-law claim . . . it does not of its own force create *federal jurisdiction*."); Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 945 (9th Cir. 2009) ("[I]f the doctrine of complete preemption does not apply, even if the defendant has a defense of [express] preemption within the meaning of § 514(a) because the plaintiff's claims 'relate to' an ERISA plan, the district court is without subject matter jurisdiction.") (citation and internal marks omitted); Prudential Ins., 413 F.3d at 907 ("Although express preemption does not allow for automatic removal to federal court, it does provide an affirmative defense against claims not completely preempted under ERISA § 502); Primax Recoveries, Inc. v. Sevilla, 324 F.3d 544, 549 (7th Cir. 2003) ("[T]he fact that a defendant may be able to interpose ERISA preemption as a defense to a suit under state law does not confer federal jurisdiction over the suit; federal jurisdiction depends on the claim, not upon defenses, even ERISA preemption defenses."); Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir. 1999) ("As an affirmative defense, [express] preemption does not furnish federal subject-matter jurisdiction under 28 U.S.C. § 1331 . . ."); James F. Jorden et al., Handbook on Erisa Litigation, § 2.06[B] (3d ed. 2012 Supplement) ("[E]ven if a state law claim is preempted by § 514, the complaint is not removable to federal court unless it is also encompassed by ERISA's civil enforcement scheme."). In short, complete preemption under § 502(a) provides a basis for federal question jurisdiction; express preemption under § 514(a) does not.

In the portion of its opinion identifying the possibility of federal question jurisdiction

in this case, the Eighth Circuit stated:

> Our determination that the Employment Agreement is not an
> ERISA plan does not end the subject-matter-jurisdiction inquiry.
> ERISA preempts all state laws that "relate to" an employee
> benefit plan. 29 U.S.C. § 1144(a). Though "relate to" has
> generated many difficult interpretive issues, in general the
> Supreme Court gives it a "broad common-sense meaning, such
> that a state law 'relates to' a benefit plan in the normal sense of the
> phrase, if it has a connection with or reference to such a plan."
> Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47, 107 S. Ct. 1549,
> 95 L. Ed. 2d 39 (1987) (quotations omitted). Here, further
> questions arise because the Employment Agreement included two
> provisions that may "relate" the Agreement to other DM&E
> programs that are ERISA plans.

Schieffer, 648 F.3d at 939. This Court does not believe the Eighth Circuit panel meant to

suggest that the "relate to" language of § 514(a) confers federal jurisdiction. The Eighth Circuit

in other cases has kept clear the distinction between complete preemption under § 502(a) and

express preemption under § 514(a). See Prudential Ins., 413 F.3d at 907-914.

Following remand, in its briefs to this Court and at oral argument, DM&E asserted that this

Court had federal question jurisdiction over the present matter because Schieffer's arbitration

demands "related to" ERISA plans. This argument conflates the complete preemption of § 502(a)

with the express preemption of § 514(a). The "relate to" language of § 514(a) is not determinative

of whether a state-law suit falls within the scope of § 502(a). See Marin Gen. Hosp., 581 F.3d at

949 ("[T]he question whether a law or claim 'relates to' an ERISA plan is not the test for complete

preemption under § 502(a)(1)(B). Rather, it is the test for [express] preemption under § 514(a).").

Keeping in mind the distinction between complete preemption under § 502(a) and express

6

preemption under § 514(a), this Court turns to analyzing whether there exists federal jurisdiction based on Schieffer's claims in his arbitration demand.

## B. Complete Preemption of Schieffer's Claim Under § 502(a)

Whether a case arises under federal law typically hinges on the "well-pleaded complaint" rule, which focuses on whether the plaintiff's statement of his own claim presents a federal question. Aetna Health, Inc. v. Davila, 542 U.S. 200, 207 (2004). There exists an exception to the well-pleaded complaint rule where a federal statute such as ERISA "wholly displaces the state-law cause of action through complete pre-emption." Id. (quotation omitted). When a state-law cause of action falls within the scope of a federal statute with complete preemptive power, the cause of action, "even if pleaded in terms of state law, is in reality based on federal law" and therefore federal question jurisdiction exists. Id. at 207-08.

In Davila, the Supreme Court laid out a two-part test for determining whether a state-law claim falls within the scope of § 502(a). Under Davila, a state-law cause of action is completely preempted if 1) "an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and 2) "where there is no other independent legal duty that is implicated by a defendant's actions." 542 U.S. at 210; see also Prudential Ins. Co., 413 F.3d at 914 (same). The Davila test is conjunctive: "a state-law cause of action is preempted only if both prongs of the test are satisfied." Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 328 (2nd Cir. 2011); see also Borrero v. United Healthcare of N.Y., Inc., 610 F.3d 1296, 1304 (11th Cir. 2010) ("The test in Davila is conjunctive—both conditions must be satisfied for a claim to be completely preempted."). This Court considers each prong of the test in turn.

## 1. Davila Prong One

7

The first prong under <u>Davila</u> evaluates whether a plaintiff seeking to assert a state-law claim "at some point in time could have brought [the] claim under ERISA § 502(a)(1)(B)." 542 U.S. at 210. Section 502(a)(1)(B) of ERISA provides that a participant in, or a beneficiary of, an ERISA-regulated plan may bring an action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A careful review of Schieffer's arbitration demands and DM&E's employee benefit plans make clear that Schieffer could not have brought his claims under § 502(a)(1)(B) once he was terminated and discontinued from the benefit plans of DM&E.

First, Schieffer, post-termination of employment, could not bring a claim for the relief he sought in the arbitration demand pursuant to § 502(a)(1)(B) because the claims are not brought by or as "a participant or beneficiary" of an ERISA-regulated plan. Schieffer is not a "beneficiary." His ability to bring suit under § 502(a)(1)(B) for the relief sought turns on whether he remained a "participant" in any of DM&E's ERISA-regulated plans after his termination. <u>See</u> <u>Hansen</u>, 641 F.3d at 1222 ("[I]f the party seeking state-court relief is not a 'participant or beneficiary' under an ERISA plan, he or she could not have brought suit under § 502(a)(1)(B) of the statute, and thus any state law claim brought by such a person would not be completely preempted."). ERISA defines a "participant" as:

> [A]ny employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

8

29 U.S.C. § 1002(7). In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Supreme Court further construed the term "participant" to mean "either employees in, or reasonably expected to be in, currently covered employment, or former employees who have a reasonable expectation of returning to covered employment or who have a 'colorable claim' to vested benefits." Id. at 117 (internal citations, quotation marks, and alterations omitted). The Court explained that in order to establish "that he or she may become eligible for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." Id. at 117-18.

None of DM&E's ERISA-regulated plans provide for the delivery of benefits to a terminated employee such as Schieffer of the nature and extent he sought. Doc. 67-2 at p. 7,16-18; Doc. 7-1 at 9, 32; Doc. 67-3 at 7; Doc. 67-4 at 7; Doc. 67-5 at 7-8; Doc. 67-7 at 6; Doc. 67-8 at 26-27; Doc. 67-9 at 42-43. DM&E had elected to pay Schieffer cash upon termination under the Employment Agreement instead of providing employee benefits, and Schieffer was contesting the amount of that payment. Doc. 7-1 at ¶ 23. If Schieffer's claims result in a monetary judgment against DM&E, the receipt of that money would not constitute the receipt of a plan benefit. Instead, Schieffer will be receiving money by virtue of the Employment Agreement which, assuming that DM&E did not terminate Schieffer for cause, allows Schieffer to receive certain benefits in a manner that he would never be entitled to under the terms of DM&E's ERISA-regulated plans.

Second, the wrong alleged in Schieffer's state-law claims falls outside of the scope of § 502(a)(1)(B). Schieffer is not seeking to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B). Prior to the remand, DM&E

9

acknowledged as much by stating that "the arbitration that Schieffer seeks to pursue is not being brought as a means of enforcing ERISA rights because Schieffer asserts no ERISA-covered right." Doc. 23 at 13. Although Schieffer's arbitration demands make reference to DM&E's ERISA-governed plans, these references do not convert Schieffer's claims into ones for plan benefits. Schieffer's arbitration demands make reference to DM&E's ERISA-governed plans solely as a means of measuring the consideration contained in the Employment Agreement, a contract that is entirely separate from the terms of any ERISA-governed plan. In other words, Schieffer's arbitration demands are "demands under a free-standing single-employee contract that simply pegged DM&E's payment obligations to amounts that would have been due under ERISA plans . . ." Schieffer, 648 F.3d at 939. As such, Schieffer could not have brought his claim under § 502(a)(1)(B), and the first prong of the Davila test is not satisfied.

## 2. **Davila Prong Two**

The question under Davila's second prong is whether "there is no other independent legal duty that is implicated by defendant's actions." 542 U.S. at 210. If there is an independent legal duty apart from those established by ERISA or an ERISA-governed plan, a claim based on that duty is not completely preempted under § 502(a)(1)(B).

Schieffer's arbitration demand asserts that DM&E breached its obligations under the *Employment Agreement* to pay Schieffer, among other matters, the employee benefits described in Section 3(c) "for a period of not less than three years from the date on which the Severance Payment is paid in full." Doc. 7-1 at 19. This claim does not rely on, and is independent of, any duty under ERISA or DM&E's ERISA-governed plans. To be sure, this Court directed DM&E to file all of its ERISA-governed plans. None of DM&E's ERISA-governed plans allow a terminated employee like Schieffer to continue receiving employee benefits in the manner laid out

10

in the Employment Agreement.[1]  Doc. 67-2 at p. 7,16-18; Doc. 7-1 at 9, 32; Doc. 67-3 at 7; Doc.

67-4 at 7; Doc. 67-5 at 7-8; Doc. 67-7 at 6; Doc. 67-8 at 26-27; Doc. 67-9 at 42-43.

Here, Schieffer's arbitration demand does not concern any failure to provide him notice

of his rights under COBRA.  Instead, Section 24(a) of Schieffer's arbitration demand focuses on

DM&E's three-month delay in making Schieffer's severance payment.  Schieffer argues that the

terms of the employment agreement required that Schieffer be kept "on the Company payroll"

until DM&E had given Schieffer his severance payment.  Schieffer contends that DM&E's

failure to keep Schieffer on the company payroll resulted in the early triggering of the 18-month

COBRA period.  This is not a claim based on ERISA § 502(a)(1)(B), § 502(a)(3), or § 502(a)(2),

but based on the terms of the Employment Agreement.

---

[1] Schieffer's arbitration demand contains far-reaching claims for special benefits under the Employment Agreement, including for "vacation accruals and banked vacation cash compensation." Schieffer asserts that DM&E's failure to allege that they use a separate trust fund to pay vacation benefits means that Schieffer's demand for vacation benefits does not arise under ERISA. "ERISA regulates 'employee welfare benefit plans' which include plans that provide employees medical, sickness, and vacation benefits." Miller v. PPG Indus., Inc., 278 F. Supp. 2d 826, 828 (W.D. Ky. 2003) (citing 29 U.S.C. § 1002(1)). In Massachusetts v. Morash, 490 U.S. 107, 114 (1989), the Supreme Court of the United States held that a company's policy to pay employees for unused vacation time did not constitute an employee welfare benefit plan where those benefits were paid from the company's general assets. In addition, the Secretary of Labor has promulgated a regulation that excludes vacation benefits from ERISA where the employer pays the benefits out of its general assets. See Miller, 278 F. Supp. 2d at 828 (citing 29 C.F.R. § 2510.3-1(b)(3)). The result may be different, however, if the benefits are "paid directly from a fund established by the employer or a group of employers." Id. at 829. Here, the DM&E ERISA-governed plans do not address such vacation accruals or banked vacation cash compensation. DM&E's Employee Handbook (Doc. 66-2) does discuss "Annual Leave Benefits," however, and explains how annual leave benefits are calculated. Doc. 66-2 at 26-27. The Employee Handbook does not mention whether annual leave benefits are paid from DM&E's general assets or from a separate fund. Before this Court, DM&E did not claim that any payment for unused vacation would come from any source different than general assets. See Doc. 71 at 2-4. Neither the arbitration demand nor any of the plans—and the Court directed the filing by DM&E of all of its ERISA-governed plans—reveal unused vacation reimbursement to be a plan benefit.

11

In short, Schieffer's claims for payments for employee benefits arise out of a separate agreement that references DM&E's ERISA plans as a method of fixing the value of that agreement. Accordingly, Schieffer's claim fails to invoke federal jurisdiction under the second prong of the Davila test. See Stevenson v. Bank of N.Y. Co., Inc., 609 F.3d 56, 62 (2nd Cir. 2010) (no preemption of breach of contract claim based on employer's alleged promise to maintain former employee's pension and benefits where employee's claims made "reference to ERISA plans solely as a means of describing the consideration underlying an alleged contract that itself is separate from the terms of any plan.").

Indeed, DM&E in earlier briefing conceded that DM&E's ERISA-governed plans are not the basis or source of Schieffer's claims. DM&E maintained that "DM&E assessed [its benefit] plans and concluded that coverage could not be extended to a former employee in Schieffer's situation." Doc. 23 at 9.[2] Despite DM&E's concession in this regard, this Court at oral argument requested that the parties file all ERISA-governed plans in existence at DM&E at the time of Schieffer's termination. This Court endeavored to read the numerous pages of plan documents filed. Having done so, this Court concludes that Schieffer's claims "are demands under a free-standing single-employee contract that simply pegged [part of] DM&E's payment obligations to amounts that would have been due under ERISA plans." See Schieffer, 648 F.3d at 940.

Despite DM&E's arguments to the contrary, Johnson v. U.S. Bancorp, 387 F.3d 939 (8th Cir. 2004) does not control the present case. In Johnson, the plaintiffs sued their employer in federal court, alleging a wrongful denial of benefits under ERISA and state law claims for breach

---

[2] DM&E made similar statements in Scharnweber v. Dakota, Minn. & E. RR. Corp., No. 09-4025, regarding entitlement of a former employee to benefits under its health plan. In Scharnweber, DM&E stated that "[c]ontinuing benefits under DM&E's health plan was not, however, an option: the plan only allows for participation by active employees." Scharnweber, Doc. 37 at 6.

of contract. Id. at 941. On appeal, the plaintiffs argued that their employer had created a "free-standing contract" by promising to pay the plaintiffs a severance payment "*in accordance with*" the terms of the company's ERISA plan. Id. at 942. The Eighth Circuit disagreed and found that ERISA preempted the plaintiff's breach of contract theory. Id. This case differs from Johnson in a critical respect. Unlike the employer's promise in Johnson, DM&E's promise to pay Schieffer employee benefits is not simply a promise to pay Schieffer employee benefits "*in accordance with*" DM&E's ERISA-governed plans. In other words, DM&E was not promising to do something that its ERISA plans obligated it to do. Instead, DM&E promised to pay Schieffer benefits in a manner not provided for in any of DM&E's ERISA plans.

Nor is this a situation where the Employment Agreement amended DM&E's ERISA plans. See Schieffer, 648 F.3d at 939 ("If these are demands for the payment of benefits under ERISA plans, as amended by the Employment Agreement, then *to that extent* all state law remedies are preempted."). The parties did not enter the Employment Agreement for purposes of amending DM&E's ERISA-governed plans. Indeed, Section 3(c) of the Employment Agreement states:

> In the event the Executive is not permitted to participate in [DM&E's health, welfare, and retirement benefit programs], whether by law *or the terms thereof*, the Company shall periodically pay to the Executive, in lieu of such participation, a cash payment equal to the amount the Company would have contributed toward the Executive's participation in the plans or programs.

Doc. 7-1 at 18 (emphasis added). Thus, if the terms of one of DM&E's ERISA plans precluded Schieffer from participating in the plan, DM&E would simply pay Schieffer the equivalent of that plan, as it sought to do in this case, rather than amend the terms of the plan itself. Schieffer makes demands in arbitration that DM&E underpaid him under the Employment Agreement, not that the Employment Agreement somehow amended DM&E's ERISA-governed plans. Such claims belong

in arbitration, consistent with the terms of the Employment Agreement.[3]   Doc. 7-1 at 20.

Schieffer's arbitration demands are "demands under a free-standing singe-employee contract that

simply pegged DM&E's payment obligations [in part] to amounts that would have been due under

ERISA plans." See Schieffer, 648 F.3d at 939-40.

## III. CONCLUSION

For the reasons explained, this Court lacks federal subject matter jurisdiction over this case.

Accordingly, it is hereby

ORDERED that Schieffer's Motion to Dismiss is granted and the case is dismissed.

Dated March 8⁴, 2012.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

---

[3] In its previous Opinion and Order, this Court noted that even ERISA claims are arbitrable. Schieffer, 744 F.Supp. 2d at 997 n.6 (citing Franke v. Poly-America Med. & Dental Benefits Plan, 555 F.3d 656 (8th Cir. 2009); Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc., 847 F.2d 475, 477-79 (8th Cir. 1988)). The parties apparently did not contest this on appeal, as the Eighth Circuit did not address it.